CASE 41—PETITION ORDINARY—DECEMBER 10.

## Morton &c. v. Hamilton College.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. PROMOTERS AND PROJECTORS—LIABILITY OF CORPORATION SUBSEQUENTLY FORMED, FOR UNDERTAKINGS OF—ESTOPPEL.—Where the promoters and projectors of a corporation, not in existence at the time, but subsequently organized, undertook as a provisional body, preparing to organize the corporation, that certain persons should be held harmless if they would execute a certain indemnifying bond that was necessary to raise a sufficient sum of money to insure the organization of the corporation, the corporation after its organization is liable to said persons for any sum they may have had to pay by reason of the execution of the bond; and the corporation is estopped to deny that the provisional body did not have the power to bind it.

2. CORPORATIONS—HOW THEY MAY BE BOUND.—While it may require a majority of the provisional agents or trustees to bind the future corporation, in this case no objection was raised to the plan of raising the money, and the consent of them all will be inferred.

WEBB & FARRELL FOR APPELLANTS.

1. Where a corporation adopts a contract, entered into by the pro-

moters before it is *in esse,* which is intended to inure to the benefit of the corporation and does inure to its benefit, it takes the burden with the benefit, and the contract is enforceable against it. (Beach on Private Corporations, vol. 1, section 198; Little. Rock & Fort Smith R. Co. v. Perry, 37 Ark., 164; Paxton Cattle Co. v. First Nat. Bank of Arapahoe, 21 Neb., 621; Bell's Gap R. Co. v. Christy, 79 Penn. St., 54; Low v. R. Co., 45 N. H., 370; Frankfort & Shelbyville T. P. Co. v. Churchill, 6 Monroe, 427 and 428; Thompson on Law of Corporations, vol. 4, sec. 5258, p. 3973 and section 5303; German Nat. Bank v. Louisville Butchers' Hide & Tallow Co., Ky. L. R., vol. 16, p. 881; City of Covington v. Covington & Cincinnati Bridge Co., 10 Bush, 81.)

2. The books and records of a corporation are competent evidence against it to show admissions. (Holden v. Hoyt, 134 Mass., 181.)

BEAUCHAMP & WALTON FOR APPELLEE.

1. A corporation is not responsible for the acts, nor bound by the contracts of its promoters done or entered into before incorporaated, unless it is made so either by its charter or by its own express contract or ratification after incorporated, or where it has accepted and received the benefit of a contract made in its behalf with the understanding that it would be adopted by it. (Am. & Eng. Enc. of Law, vol. 4, sec. 9, p. 201; L. R. & Ft. S. R. v. Perry, 37 Ark., 164; Perry v. L. R. & Ft. S. R. Co., 44 Ark., 388.)

2. An express promise by the promoters must be made by a majority of them. (Bell's Gap R. Co. v. Christy, 79 Pa. St., 54; Morawetz on Private Corporations, vol. 1, secs. 234, 547-8-9; Thompson on Law of Corporations, vol. 1, p. 480; Cook on Stock and Stockholders and Corporation Law, vol. 2, sec. 707; Munson v. Syracuse & C. R. Co., 103 N. Y., 58-75; First Nat. Bank v. Armstrong, 42 Fed. Rep., 193; Wilber v. N. Y. & C. Co., 12 N. Y., Supp., 456.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted by J. B. Morton and others against a corporation known and called Hamilton College. It is on an implied *assumpsit* on the part of the college to pay to the plaintiffs certain sums of money advanced by them as the *promoters* of what was then

called Hocker College, with the name of the corporation changed to that of Hamilton College by a charter subsequently obtained.

The money, it is alleged, was advanced by the plaintiffs for the college, with the agreement and understanding that it was to be repaid to the plaintiffs when the corporation was brought to life by the charter.

We wish much the action had been in equity as the facts bring the case clearly within the jurisdiction of the chancellor, and, while the action of *assumpsit* upon an implied understanding is in the nature of an equitable claim, still where money has been advanced, as in this case, and gone into a trust fund to be applied in a particular way, the *corpus* of the trust should not be interfered with under an execution from a common-law court; and, besides, it is often difficult for the chancellor to raise an equity, although of the highest character, from a given state of facts, and much more difficult for a jury to do so in the absence of an express contract. This case, however, went off on an instruction to find for the defendants.

In the year 1876 J. M. Hocker owned Hocker College, in the city of Lexington, a college of much celebrity and patronized principally if not controlled by the members of the Christian Church.  Hocker desired to sell the property, and the members of that church, wishing to place it under their control, entered into negotiations for its purchase, and Hocker agreed to let them have his property for $50,000, on certain terms and conditions.  A committee was selected to raise the $50,000 by subscrip-

tion, and succeeded in raising all but $10,000 or $15,000. At one of the meetings, where nearly all of those were present who were recognized, and made a board for the purpose of organizing the college and raising the fund, a man by the name of Hamilton was present, and agreed to subscribe $10,000 upon certain conditions.

He was not willing to make the payment at the time and in the manner of the other subscriptions, and, to prevent the loss of the subscription proposed to be made by Hamilton, it was suggested that he be indemnified against the payment of interest, as was stipulated in the other subscriptions, and accordingly, as is alleged, the appellants gave to Hamilton a bond of indemnity, and he executed his notes, like those of the other subscribers, bearing interest, and, with additional subscriptions made perhaps on the same day the contract with Hocker was executed, and the property passed to the trustees, and a charter obtained by the president, with the name of the institution changed to that of *Hamilton College.*

Hamilton did not live long after this purchase, and these *appellants* were compelled to pay a difference of near $1,200 on account of their bond, all of which went into the fund raised to make the purchase.   The bond was executed at the instance and persuasion of some of the trustees, and without objection by any, and when one or more of the appellants declined to sign the indemnity they were urged to do so upon the ground that, if they had the money to pay, such just and equitable claims could not be overlooked.   They had each sub-

scribed liberally to the enterprise, and, from the facts of the record, it was never intended or supposed by any one present that they were making a voluntary donation to the corporation of any sum they might have to pay by reason of the bond to Hamilton.

They derived no benefits other than those resulting to the subscribers of stock; had no interest in the property, but assumed a liability that was at the basis of the undertaking, and without which the purchase would not have been made.

There is no pretense or claim that the plaintiffs looked to the individual liability of the trustees for contribution, but, on the contrary, it is apparent that this money was regarded as a part of the trust fund with which the property was purchased, and those contributing to its payment could look to the corporation for remuneration. Some one was liable to them, and there is no controversy as to the payment of the money.

The trustees, or those acting as such, were inducing the plaintiffs to pay the money or assume the responsibility, that the corporation might be formed. They were acting at the time for the contemplated corporation. The institution obtained the money on the faith that it would be repaid, and the equity of the appellants should be enforced.

It is contended that a majority of the provisional agents or trustees must have induced the appellants to have assumed the responsibility before the corporation can be made liable, and while this may be and doubtless is the correct rule, here there was no objection

made, and the inference is plain that all were consenting to this mode of obtaining Hamilton's subscription. No single member of a corporation can bind it to a contract unless authorized by the board of trustees, or those who have the right to contract in its behalf, but in this case the body, having the capacity to act, obtained this money and paid it on the purchase on the faith that it would be repaid or the parties saved harmless, and the corporation, to which its very payment gave life, will be estopped from saying this provisional body had no power to bind it.

In the case of Low v. Railroad, 45 N. H., 370, the court, in deciding a similar question, said: "In such cases it can avail nothing, by way of defense, to show that in fact the party had no capacity to make such an antecedent request or to bind himself by a contract, as in the case of a corporation, that was not organized at all."

In 29 Penn. State Reports, 54, in he case of Bell's Gap R. R. Co. v. Cristy, it was said: "We do not desire to controvert the principle established in England, and to some extent recognized in this country, that when the projectors of a company enter into contracts in behalf of a body not existing at the time, but to be called into existence afterwards, then if the body for whom the projectors assumed to act does come into existence it can not take the benefit of the contract without performing that part of it which the projectors undertook that it should perform."

It is true that the corporation, after its organization,

in nowise ratified the contract, for it had already received the benefits under the agreement with the projectors, and the money paid invested in the trust estate. If this had been a joint adventure between these projectors and the money or liability assumed by the plaintiffs as alleged, can it be well argued that the joint adventure or the trust fund would be exempt from liability? We think not; and the fact that these projectors obtained a charter and converted the institution into a corporation relieves it from all liability is an argument equally untenable.

This case was heard on the testimony of the plaintiffs alone, and when the case goes back it should be transferred to equity and the parties on each side allowed to take proof, and if the plaintiffs are entitled to relief the money should be required to be paid from the income of the corporation. The report of the committee to investigate the claim of the plaintiffs was properly rejected as evidence.

Reversed and remanded for proceedings in conformity to this opinion