## WILLIS *v.* MUSCOGEE MANUFACTURING COMPANY.

1. A manufacturing company or a number of such companies have a right to make reasonable rules and regulations for the government of their employees. A rule that employees must "work a six days' notice when leaving the employ of this mill " is a reasonable rule for a manufacturing establishment ; and when employees with a knowledge of this rule enter the service of the company, such rule becomes a part of the contract and is binding upon such employees.

2. Where several companies agree to enforce such a reasonable rule, to report to each other all employees leaving without compliance therewith, and, except in special cases, not to employ men so reported, such agreement, while voluntary and not enforceable, is not, in the absence of malice, an unlawful combination or conspiracy which would make such companies liable to men properly reported for a violation of the rule.

3. Where, however, a company wrongfully reported an employee and thus damaged him by preventing his getting work, such company would be liable.

4. In the trial of a suit for damages by an employee against such company for having wrongfully reported him to other companies as having left its service without complying with the rule, where the plaintiff introduces evidence from which the jury might properly find that the plaintiff had been discharged or had left the service of the defendant because the latter had insisted on a change in his contract of employment, and that the rule, therefore, did not apply to him, and also that the plaintiff had been damaged by being deprived of employment in other manufacturing establishments by reason of the wrongful act of the defendant, it was error to grant a nonsuit.

Argued June 17, — Decided July 13, 1904.

Action for damages. Before Judge Butt. Muscogee superior court. November 12, 1903.

*G. Y. Tigner* and *Hatcher & Carson*, for plaintiff, cited Civil Code, § 3841; *Ga. Rep.* 77/172; 93/633; 108/411; 115/429; 19 L. R. A. 408; 62 L. R. A. 700, and note; 80 Tex. 400, s. c. 16 S. W. 111.

*McNeill & Levy*, for defendant, cited 86 *Ga.* 294; 7 Pickle, 154; 54 Minn. 223 (55 N. W. 1119); 21 L. R. A. 337; 6 Tex. Civ. App 11; 159 Pa. St. 420 ; 33 W. N. C. 421 ; 28 Atl. 190 ; 33 Atl. 1; 38 L. R. A. 505; 21 S. W. 384; 65 N. Y. Supp. 946;

51 Cen. L. J. 304; 77 N. W. 13; 13 Lea, 507; 49 Am. R. 666; 55 L. R. A. 271; 124 Fed. 246; Cooke's Trade and Labor Unions, 26.

SIMMONS, C. J. Willis brought suit for damages against the Muscogee Manufacturing Company, alleging, that the defendant had wrongfully reported him to certain other companies as having left its service in violation of one of its rules, and that, because of such report, such other companies had, under an agreement with the defendant, refused to give him employment. The evidence introduced by the plaintiff was substantially as follows: In 1902 several cotton-mill companies in Muscogee county, Georgia, among them the defendant, agreed to make and post in their mills a rule requiring employees, when leaving the employment of a company, to "work a six days' notice." They also agreed to report to each other all employees who left their employment without complying with such notice, and, except in special cases, not to employ men so reported. In pursuance of this agreement the defendant posted in its mill the following notice: "All employees of this mill must work a six days' notice when leaving the employ of this mill, and no employee of any other cotton-mill of Columbus and vicinity will be employed by this mill unless they have worked the required notice." This rule had been in operation for several months when Willis, the plaintiff, obtained employment of the defendant. Plaintiff was perfectly familiar with the rule, and, while he was boss in another mill, had reported other operatives for its violation. He had worked for several of the mills which were parties to the above-mentioned agreement, and for the defendant, prior to 1902, and had in each case, when leaving one mill for another, worked out the required notice. Plaintiff was a "loom fixer," and as such was employed by the proper officer of the defendant. This officer agreed to employ plaintiff at $1.50 per day to repair Crompton looms, but, according to the plaintiff's testimony, it was expressly understood that he was not to work at that price on Crompton and Knowles looms combined. Plaintiff worked for some time on the Crompton looms, and was then directed by an officer of the company to repair some Crompton and Knowles looms combined. Plaintiff asked at what price, and was told that he would receive but $1.50 per day. When he refused to work on these looms at that price, the defendant's officer

told him it was all he would give, and that if plaintiff would not do the work for that price he could quit. The work on these combined looms was more difficult than that on the others, and was worth more per day. After this conversation with the defendant's officer, plaintiff considered himself discharged. He left and applied to other companies for employment. He was refused, because the defendant had sent his name to the other companies on what was called the "blacklist," in which it was stated that plaintiff had left the service of the defendant without cause and without working the required six days' notice. Plaintiff endeavored to obtain employment from the other companies, but failed, and, according to his contention, his failure was the result of the report of the defendant sent to the other companies. Finally, at a cost of some $40, he had to remove from Columbus to Griffin, where he obtained work. There was some conflict in the evidence as to whether the other companies refused to employ plaintiff because of the report sent out by the defendant, or for other reasons. At the conclusion of the evidence for the plaintiff the court granted a nonsuit. To this judgment the plaintiff excepted.

1. All manufacturing companies, and as well all other persons who employ labor, have the right and power to make reasonable rules and regulations for the government of their employees. It is reasonable to require that employees shall give their employers a certain number of days' notice before leaving their service. It has been held to be reasonable to require such notice and to provide that if the notice is not given, the employee shall forfeit all wages then due him. The rule in the present case was reasonable, and one who, with knowledge of the rule, entered the service of the defendant was bound by the rule. It entered into his contract of service and became a part of it, as binding upon him as any other part of his contract. Manufacturing corporations frequently make large contracts for goods to be delivered at a specified time. In order to comply with these contracts it is necessary for them to keep the requisite number of employees in their service. If employees were allowed to leave their employment without giving any notice, it would in many cases be impossible for the employers to fill their places in time to complete the goods according to the contracts made for their delivery. With six days' notice of the intention of an employee to leave, the em-

ployer would have a reasonable time to fill his place. For these and other reasons we think that the rule was a reasonable one.

2. It was contended by counsel for the plaintiff in error that, while the rule may have been a reasonable one when adopted by a single corporation, it was an unlawful conspiracy for a number of corporations to join in an agreement to enforce such a rule by reporting violations of it to each other and refusing to employ any person who had been so reported. We can not see the force of the reasoning of counsel on this point. We see no reason why the officers of a dozen cotton-mills in or near the same city can not make such an agreement with each other. An employer has a right to select his employees according to what standard he may choose, though such standard be arbitrary or unreasonable. An employer certainly has a right to refuse to employ any one whom he knows to have left another employer in violation of a reasonable rule which both employers are seeking to enforce. An agreement among a number of employers to report such violations and thus assist each other in the selection of their employees is not unlawful, though coupled with an agreement to employ no one so reported, such an agreement not being binding upon the employers, and there being no allegation that it was entered into through malice. See Baker v. Ins. Co. (Ky.), 55 L. R. A. 271; Brewster v. Miller's Sons (Ky.), 38 L. R. A. 505; Boyer v. Tel. Co., 124 Fed. 246; 8 Cyc. 645 et seq.

3. There are, however, limitations upon the rights of the employers in this matter. While the employee is bound by the reasonable rules of the employer, as a part of the contract of employment, and may be reported to other employers for a breach of those rules, there is a correlative duty upon the employer not to report an employee wrongfully. The rule which enters into the contract of employment is as much a part of the contract of the employer as of the employee, and both are bound by it. The employer is strictly within his rights as long as he reports no employee for a violation of the rule except such as have actually violated it. When, however, he wrongfully makes such a report and an employee is thereby damaged, such employee has a right of action. While the corporations which entered into the agreement above described had a right to do so, they owed a duty to their employees not to abuse that right. If one of them falsely reported

an employee, to his injury, such employee may recover for the tort. The combination of the employers was a powerful machine for the accomplishment of lawful results, but it was capable of misuse to the injury of innocent employees. When a company so misuses it, such company must take the consequences.

4. Our difficulty has arisen, not in coming to the above conclusions, but in applying them to the facts of the present case so as to determine whether the trial judge erred in granting a nonsuit. It was contended by counsel for the plaintiff in error that the rule as to six days' notice did not apply to the facts of this case, and that, instead of "leaving" his employer, plaintiff was discharged by defendant; that he had made a contract to do certain work on a certain kind of loom at a stipulated price, expressly excepting from the agreement work on the combined looms which he stated he would not do for the price paid for the work contracted for. Without his consent an officer of the defendant ordered him to work on the combined looms without any addition in his wages. This, he claims, was a change in his contract, to which he refused to accede, and he was then told he could quit. In consequence of this declaration by the defendant's officer, he gathered up his tools etc., and left. The other companies were then notified by defendant that plaintiff had left its employment without cause and in violation of the rule as to giving notice. On the other hand, the defendant claims that the evidence shows that the plaintiff left its service voluntarily and refused to work out the required notice, and that the defendant was, therefore, justified in reporting him to the other companies as having violated the rule. This we think was a question of fact which should have been submitted to the jury. There was enough evidence to require that the case be submitted to a jury. If the jury had found in favor of the plaintiff on this issue, he would have been entitled to recover some damages. When one promulgates an ambiguous or doubtful rule, it must be construed strictly against him. This rule of construction must be borne in mind in ascertaining whether the regulation as to notice applied to such a case as was made by the termination of the plaintiff's employment. If the employer, who promulgated the regulation, made a mistake in its construction and applied it to a state of facts which did not come within it, the employee injured by such mistake has a right to recover. The employer can

not arbitrarily place an employee upon the blacklist as having violated the regulation, when in point of fact the employee's conduct did not come within the terms of such regulation and he, therefore, had not violated it. 'On the other hand, if the plaintiff left the service of the defendant voluntarily, without cause and without giving the required notice, or if he had contracted to do all such work in his line as the company might reasonably require of him, without excepting work upon the combined looms, and then refused to work upon these looms for the agreed price per day, and left because defendant would not give him more, then the defendant had a right to report him as having left without cause and without working out the required notice. It was also contended by the plaintiff that this report to the other companies prevented his obtaining other employment, and compelled him, in order to obtain work, to remove to another city; that he thus lost time and was put to actual expense by reason of his having been reported by the defendant. The defendant claimed that the agreement between it and the other companies was voluntary and not legally binding on any of them, and that any one of the other companies could have employed plaintiff had it seen proper to do so, and that, in truth, the notice sent out to the other companies was not the real cause of the plaintiff's failure to get work. Under the evidence this was also a question for the jury, and not for determination by the court. We therefore think that the court erred in granting a nonsuit.

*Judgment reversed. All the Justices concur.*