35 N.J. Super. 405 (1955)
114 A.2d 302
GAETANO LONGO, PLAINTIFF-APPELLANT,
v.
WILLIAM REILLY, WILLIAM SIDNER, JAMES BAYSMORE, IRVING GOULD, WILLIAM REICHARDT, ALSO KNOWN AS WILLIAM RICHARDS, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1955.
Decided May 4, 1955.
*407 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. William Hunter argued the cause for plaintiff-appellant (Messrs. Coulomb, McAllister & Hunter and Mr. Ernest M. Curtis, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This case involves the novel question as to whether common-law tort liability may be predicated on the defendants' fraudulent conduct of an election for officers of a labor union resulting in the plaintiff's deprivation of the title and emoluments of an office for which he was a candidate.
It is observed at the outset that defendants sought leave several days prior to the argument to file an answering brief substantially out of time. There was no indication whatever of justifiable cause for the failure to request such leave prior to the expiration of the time limited by the rules. Permission was consequently denied notwithstanding the unwarranted *408 burden thus imposed by the defendants on the court of resolving this appeal ex parte.
The first count of the complaint, epitomized, recites that plaintiff is a member in good standing of Hotel and Restaurant Employees and Bartenders National Union, Local No. 508, A.F. of L., and had served in the office of "Secretary and Treasurer" of the union from August 7, 1943 until December 1, 1950; that the compensation for the office is $125 per week; that a regular biennial election of officers of the union, at which plaintiff was a candidate for reelection and the defendant Richards his opponent, was held November 17, 1950; that at the election a majority of the members voting cast their votes for him for the said office but that the defendants, including Gould, candidate for president, Reilly, judge of election, and Sidner and Baysmore, tellers, "unlawfully, fraudulently and tortuously" (sic), and with the intent of depriving plaintiff of the emoluments of the office of Secretary and Treasurer, altered or erased the markings signifying a vote for plaintiff on 123 ballots in such manner as to indicate a vote for Richards instead, resulting in the declaration of election of Richards rather than plaintiff; and that plaintiff would have been elected were it not for the said transfer of votes. The second count recites the same facts, differing only in positing the miscarriage of the election on the counting of the altered ballots for Richards even without regard to the effect on plaintiff's total vote. The third count charges that the acts complained of resulted from a conspiracy of the defendants to deprive plaintiff of his office and his salary and emoluments. Damages are sought in the sum of $13,000, representing loss of salary for two years, and for $10,000 as punitive damages.
A previous action had been brought by the plaintiff and a defeated candidate for another office to set aside the declaration of the results of the election, enjoin those declared elected from exercising the respective offices, adjudge plaintiffs duly elected, and for incidental damages. This was dismissed before conclusion of the hearing in the Chancery Division *409 on the ground that plaintiffs had failed to exhaust their remedies within the framework of the constitution of the union.
In the present cause, the answer filed by the defendants pleads a denial of the charges and separate defenses of failure to exhaust remedies within the union, and res adjudicata, based upon the disposition of the first action. Thereafter defendants moved for judgment on the pleadings, assigning the additional defenses of statute of limitations and failure to state a cause of action. On the return of the motion the court entered judgment for defendants for failure of the complaint to state a cause of action. In an oral opinion the court concluded that it had no jurisdiction to entertain an action to be tried by jury involving the factual investigation of the conduct of the election and a determination of its legal results.
We consider first the defenses of election of remedies and res adjudicata. Their interposition misconceives the fundamental difference in the relief and judgment sued for in the respective actions. In the first action what was sought was a judgment determining that plaintiffs were elected and installing them as elected officers of the union notwithstanding the declared result of the election. In that regard the Chancery Division held that it was incumbent upon the plaintiffs to have recourse to the remedy of review within the union. In the present action plaintiff does not seek restoration of the disputed office. He asks money damages against the defendants as individuals, alleging that because of their wrongful acts he has been deprived of the benefits of a union office to which he would otherwise have been reelected. There is no union legislation looking to such relief and consequently the plaintiff had no recourse before any union tribunal for what he seeks here. Beedie v. International Brotherhood of Electrical Workers, 25 N.J. Super. 269, 273, 274 (App. Div. 1953), certification denied 13 N.J. 392 (1953). The mere fact that both causes of action arise out of the same factual situation does not make a prior *410 judgment conclusive as to the different issues and subject matter involved in the later action. Epstein v. National Casualty Co., 1 N.J. 409 (1949). Moreover, when a prior action is dismissed on grounds not going to the merits of the grievance asserted it will not constitute res adjudicata. Meier Credit Co. v. Yeo, 129 N.J.L. 82, 87 (E. & A. 1942).
The defense of election of remedies does not here apply. The first action constituted, at most, the "unsuccessful invocation of an unavailable remedy." Viewed in that light, it is no bar. Schrage v. Liebstein, 16 N.J. Super. 384, 389 (App. Div. 1951).
Our prime inquiry is whether the court of first instance rightfully concluded that the complaint states no cause of action. The view that there is no jurisdiction because of the supposed inappropriateness of submission to a jury of the factual issues concerning the mismarking of the ballots and as to the proximate relation between the alterations and the declaration of Richards' election is untenable. It seems elementary that the complexity of a factual controversy does not derogate from the right of an aggrieved person to prosecute his cause at law and have a jury pass upon the issues of fact where legally appropriate. Machinery exists for guidance of the jury by the trial court in such manner as to minimize confusion as to issues and findings. R.R. 4:50-1; 4:50-2.
It remains to consider whether the cause pleaded is actionable at all. The complaint sounds in the familiar field of the common-law action on the case for wrongful interference with one's business or property rights. The classic exemplar is the case of Keeble v. Hickeringill, 11 East 574, 575, 576, 103 Eng. Rep. 1127, 1128 (K.B. 1706), wherein Holt, C.J. said, "where a violent or malicious act is done to a man's occupation, profession, or way of getting a livelihood, there an action lies in all cases." (The foregoing quotation is found in a footnote to the report of Carrington v. Taylor in 11 East 571, 103 Eng. Rep. 1126 (K.B. 1809), and does not appear in the report of the Keeble case in 11 Modern *411 131, 88 Eng. Rep. 945 (K.B. Trinity Term, 6 Queen Anne)); and see Garret v. Taylor, Cro. Jac. 567, 79 Eng. Rep. 485 (K.B. 1620).
The New Jersey case most frequently cited for the general doctrine is Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934). In accord: Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950); Outdoor Sports Corp. v. A.F.L. Local 23132, 6 N.J. 217, 229 (1951); Mayflower Industries v. Thor Corp., 9 N.J. 605 (1952), affirming, on the opinions in the Chancery Division, 15 N.J. Super. 139 (1951) and 15 N.J. Super. 337 (1951). Invasion of "the right to pursue one's business, calling or occupation free from undue interference or molestation" is an "actionable infringement of a property right." Louis Kamm, Inc., v. Flink, supra (113 N.J.L., at page 586). The wide variety of settings in which the action is invocable is displayed in the annotation, 9 A.L.R.2d 228.
The study here narrows to the special situation of one who is wrongfully prevented by the misconduct of others from being reelected to an office which has theretofore constituted his livelihood. This position had been the plaintiff's living for seven years. The cited annotation digests many cases in which remedies have been afforded both for wrongful interference with existing employment and for unwarranted conduct preventing the obtaining of future employment. Illustrative of the latter are Owen v. Williams, 322 Mass. 356, 77 N.E.2d 318, 9 A.L.R.2d 223 (Sup. Jud. Ct. 1948); Willis v. Muscogee Mfg. Co., 120 Ga. 597, 48 S.E. 177 (Sup. Ct. 1904); Huskie v. Griffin, 75 N.H. 345, 74 A. 595, 27 L.R.A., N.S., 966 (Sup. Ct. 1909); Carnes v. St. Paul Union Stock-Yards Co., 164 Minn. 457, 205 N.W. 630, 206 N.W. 396 (Sup. Ct. 1925); Blumenthal v. Shaw, 77 F. 954 (3 Cir., 1897). A recent illustration of the action in respect to loss of current employment by wrongful compulsion exercised by a labor union is Kuzma v. Millinery Workers, etc., Local No. 24, 27 N.J. Super. 579 (App. Div. 1953). That the opportunity of acquiring property is as *412 precious in the law as the right of enjoying it, unmolested, is beyond debate. Brennan v. United Hatters of North America, Local No. 17, 73 N.J.L. 729 (E. & A. 1906). The full scope of the underlying rationale is suggested by the language in Mayflower Industries v. Thor Corp., supra (15 N.J. Super., at page 339); "unlawful interference with prospective economic advantage." And see McCue v. Deppert, 21 N.J. Super. 591 (App. Div. 1952); Newark Hardware & Plumbing Supply Co. v. Stove Manufacturers Corporation, 136 N.J.L. 401, 404 (Sup. Ct. 1948), affirmed 137 N.J.L. 612 (E. & A. 1948).
It does not seem to us, on principle, that the circumstance that plaintiff's lost employment was an elective office in a union constitutes a material differentiation. It was his way of earning a livelihood. Office in a labor union is a property right cognizable as such in law, Bianco v. Eisen, 190 Misc. 609, 75 N.Y.S.2d 914 (Sup. Ct. Sp. Trm. 1944); so is the right to be a candidate therefor, Armstrong v. Duffy, 90 Ohio App. 233, 103 N.E.2d 760 (Ct. App. 1951); cf. Way v. Patton, 195 Or. 36, 241 P.2d 895 (Sup. Ct. 1952).
In so far as public offices are concerned, Kiralfy counts two actions of trespass on the case for "usurpation of office" as early as 1586. The Action on the Case (1951), Appendix A, p. 196. In Sterling v. Turner, 1 Vent. 206, 86 Eng. Rep. 139 (K.B. 1672), an action on the case was held to lie at the instance of a candidate for bridge master of London against the mayor for his declaration of the election of plaintiff's adversary on voice vote of the electors without honoring a request for a poll. The remedy is now commonly accorded. Larson v. Marsh, 144 Neb. 644, 14 N.W.2d 189, 153 A.L.R. 101 (Sup. Ct. 1944); Frank v. Eaton, 225 App. Div. 149, 231 N.Y.S. 477 (App. Div. 1928), and see Valdez v. Gonzales, 50 N.M. 281, 176 P.2d 173 (Sup. Ct. 1946); per contra, Shields v. Booles, 238 Ky. 673, 38 S.W.2d 677 (Ct. App. 1931). The analogy of these authorities aptly supports the action laid here.
*413 The complaint herein unmistakably charges legally wrongful conduct by defendants. "Malice in the legal sense is the intentional doing of a wrongful act without justification or excuse." Louis Schlesinger Co. v. Rice, supra (4 N.J., at page 181).
The genius of the Anglo-American common law is its readiness to proliferate needed remedies for newly evident wrongs and to apply existing remedies with liberality to new aspects of recognized wrongs. No instrumentality has been more fertile toward this end than the action on the case. 2 Holdsworth, History of English Common Law (1923), p. 365; Dix, The Origins of the Action of Trespass on the Case, 46 Yale L.J. 1142, 1154-1157, 1162-1163 (1937); 14 C.J.S., Case, Action on, § 2, pp. 3, 4. It is authoritatively stated that "although the technical system of forms of action has been abolished, it is substantially true to say that almost all new forms of common law liability are today derivatives of Case." Kiralfy, op. cit., supra, p. 1. It is "the great bridge to the legal relations of modern times." (Id.) In application to the cause presently before us, it might be said, in the words of Holt, C.J., in Keeble v. Hickeringill, supra, that the action "seems to be new in its instance, but it is not new in the reason or principle of it."
"The law of England is a living law. It develops, and must develop, according to changes in the social life and social outlook. It has long since been pointed out that under our system of law the novelty of a claim is no answer to it." Best v. Fox, 2 All. E.R. 798, 800 (K.B. 1950).
Finally, as to the defense of limitations. Defendants invoke the two-year period applicable to "an injury to the person." N.J.S. 2A:14-2. This is a misconception. We are not here concerned with such a claim. The present cause is for a "tortious injury to the rights of another" not stated in either section 2A:14-2 or in 2A:14-3 (libel or slander) and is therefore controlled by N.J.S. 2A:14-1, providing for a six-year period of limitations. Kearney v. Mallon Suburban Motors, Inc., 23 N.J. Misc. 83 (Circ. Ct. 1945).
Judgment reversed.