314 S.E.2d 166

**Catherine I. TORBETT**

v.

**WHEELING DOLLAR SAVINGS & TRUST COMPANY.**

No. 15594.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1983.

Dissenting Opinion Feb. 17, 1984.

pete restrictive covenant in her employ-, ment contract was unreasonable, and for damages. The case was tried to the court and to an advisory jury[1] that answered special interrogatories, finding consideration for the covenant,[2] but that its restriction was unreasonable; and that awarded Torbett $35,000 for lost income. The trial judge agreed, and on September 1, 1981, found facts and a legal conclusion, and entered judgment for $35,000 and interest against Wheeling Dollar, whose motions for judgment notwithstanding the verdict and a new trial were denied.

## FACTS

Ms. Torbett was hired by the bank in February, 1969, and in October, 1974, was promoted to trust officer with no salary increase. She was offered a job at another bank in November of that year, informed her employer that she would leave unless she received an immediate raise and an assistant, and Wheeling Dollar agreed to her terms and granted her a twenty-three percent (23%) raise effective November 20. On November 27, she was asked to sign a contract that included this paragraph:

(4) If Employee voluntarily terminates the employment provided for herein, Employee shall not, for a period of two years following such termination, in the City of Wheeling, West Virginia, or within a radius of twenty-five miles thereof, accept employment by or in any other bank, or engage or participate, directly or indirectly, in any phase of banking or any other business enterprise which is competitive with Bank, its operations and activities.

She protested the clause but signed anyway.

In December, 1978, Torbett voluntarily quit her job and she alleged she was offered employment with another bank provided that she was safe from Wheeling

Patrick S. Cassidy, O'Brien, Cassidy & Gallagher, Wheeling, for appellee.

Paul T. Boos & James C. Gardill, Phillips, Gardill, Hazlett & Kaiser, Wheeling, for appellant.

HARSHBARGER, Justice.

Catherine Torbett sued her former employer, Wheeling Dollar Savings & Trust Company, in Ohio County Circuit Court for a declaratory judgment that a not-to-com-

1. Rule 39(c) of the West Virginia Rules of Civil Procedure permits a court to try any issue with an advisory jury.

2. *See Environmental Products Co. v. Duncan,* 168 W.Va. 349, 285 S.E.2d 889 (1981).

Dollar's covenant.[3] The advisory jury was not convinced that an offer was made, see our fn. 4, *infra* (Page 3 of Jury Interrogatories), but the court found in its final order that employment was available to her:

7. That since the time of her termination there had been employment opportunities for the Plaintiff at Security National Bank and/or Half Dollar Bank in Wheeling, West Virginia.

8. That the Plaintiff knew that the Defendant would attempt to hold her to the contract and take necessary action to prevent her from working, because they had previously taken such steps as to another former employee, therefore, she

3. That bank had previously hired a former Wheeling Dollar employee who had signed a similar covenant. Wheeling Dollar sued and prevailed, causing the new bank to lose its employee.

4. The advisory jury answered interrogatories as follows:

PAGE 1
JURY INTERROGATORIES

1) Was an oral contract made with Catherine Torbett prior to her receiving the written contract dated November 27, 1974?

YES  X
NO  ___

(If your answer to the above Interrogatory is no then you need not answer the second question on this page. If your answer is yes then you may answer the next question.)

2) Was there consideration for the "Non-Competition Clause" contained in the written contract?

YES  X
NO  ___
/S/  C.R. Delbrugge
Foreman

PAGE 2
JURY INTERROGATORIES

1. Was the promise of the Plaintiff, Catherine I. Torbett, if she voluntarily terminated employment with Defendant, Wheeling Dollar Savings & Trust Co., not to accept employment in competition with Wheeling Dollar, for a period of two years within twenty-five miles of the City of Wheeling, West Virginia, reasonable as to the time of the restriction (two years)?

YES  X
NO  ___

2. Was that promise reasonable as to the area it covers (within twenty-five miles from the City of Wheeling, West Virginia)?

YES  ___
NO  X

filed this Complaint and action for declaratory judgment.

In January, 1979, she sought a preliminary injunction and declaratory judgment to prevent defendant from enforcing the covenant. The injunction was denied on March 1, 1979, and her declaratory judgment trial was in September, 1980.

The trial court decided that the permanent injunction issue was moot because the covenant's term had expired, but that the covenant violated public policy and Torbett was entitled to damages of $35,000 for lost income since she left her job. Her order embraced the jury's answers [4] and additionally recited that she was required to sign the contract and knew that the bank would

3. Did the covenant of the Plaintiff, Catherine I. Torbett protect a legitimate interest of the bank in preserving a confidential relationship and confidential information?

YES  ___
NO  X

4. Was the restrictive covenant in the written contract unduly oppressive of the right of Catherine I. Torbett to use her personal unique qualities?

YES  X
NO  ___
/S/  C.R. Delbrugge
Foreman

PAGE 3
JURY INTERROGATORIES

1. Did Security National Bank & Trust Co. offer employment to Plaintiff, Catherine I. Torbett?

YES  ___
NO  X

2. Did Security National Bank and/or Half Dollar Bank have employment opportunities for the Plaintiff?

YES  X
NO  ___

3. Was the Plaintiff's failure to work after she left the Defendant Bank the reasonable and probable result of the restrictive covenant in the written contract?

YES  X
NO  ___

If your answer to all of the above questions is no then you need not answer question Number 4. If your answer to questions one and three or two and three is yes or if all three answers are yes, then you should answer the following Interrogatory.

4. How much is Catherine I. Torbett entitled to recover for unearned income since she left the Defendant Bank's employment.

$35,000
/S/  C.R. Delbrugge
Foreman.

attempt to hold her to it and try to prevent her from working, because it had previously done so with another former employee.

## THE COVENANT

We summarized the general law about restrictive noncompetition covenants in employment contracts in Syllabus Points 1–5 of *Reddy v. Community Health Foundation*, 171 W.Va. 368, 298 S.E.2d 906 (1982),[5] and in the Syllabus of *Helms Boys, Inc. v. Brady*, 171 W.Va. 66, 297 S.E.2d 840 (1982).[6]

■ The parties' primary dispute is whether Wheeling Dollar has a protectible employer interest.[7] A protectible interest involves confidential information unique to an employer, customer lists generated by

it, or trade secrets. *Reddy v. Community Health Foundation, supra; Helms Boys, Inc. v. Brady, supra.* The existence of a protectible interest is a question of fact for a jury or trial court sitting as a fact finder. An employer can prove its protectible interest.[8] *Reddy, supra.*

■ Wheeling Dollar presented evidence to persuade the judge and jury that there was confidential information and a protectible interest, but they were unconvinced.

"The verdict of a jury will be held sacred by this Court, unless there is a plain preponderance of credible evidence against it, evincing a miscarriage of justice from some cause, such as prejudice,

5. Syllabus Points 1–5, *Reddy v. Community Health Foundation,* 171 W.Va. 368, 298 S.E.2d 906 (1982):

"1. A restrictive covenant or covenant not to compete in an employment contract is not *per se* violative of *W.Va.Code,* 47–18–3(a) [1978], the West Virginia Antitrust Act.

"2. An employee covenant not to compete is unreasonable on its face if its time or area limitations are excessively broad, or where the covenant appears designed to intimidate employees rather than to protect the employer's business, and a court should hold any such covenant void and unenforceable, and not undertake even a partial enforcement of it, bearing in mind, however, that a standard of 'unreasonable on its face' is to be distinguished from the standard of 'reasonableness' used in inquiries adopted by other authorities to address the minor instances of overbreadth to which restrictive covenants are naturally prone.

"3. An inherently reasonable restrictive covenant is presumptively enforceable in its entirety upon a showing by the employer that he has interests requiring protection from the employee.

"4. An employee may rebut the presumptive enforceability of a restrictive covenant by showing: (1) that he has no 'trade assets' of the employer to convert; (2) that such 'trade assets' as he has belong to him and not to the employer; (3) that the employer could be equally well protected by a narrowed covenant; or (4) that the employer has had time to recoup any extraordinary investment in the employee.

"5. In an action for injunctive relief to enforce a restrictive covenant in an employment contract the burden of proving the inherent reasonableness of the restrictive covenant, and of showing a need for protection by it, is on the employer; the burden of proving that an inherently reasonable covenant should not be enforced in its entirety is on the employee."

6. Syllabus, *Helms Boys, Inc. v. Brady,* 171 W.Va. 66, 297 S.E.2d 840 (1982):

"When the skills and information acquired by a former employee are of a general managerial nature, such as supervisory, merchandising, purchasing and advertising skills and information, a restrictive covenant in an employment contract will not be enforced because such skills and information are not protectible employer interests."

7. Because we uphold the court's finding that no protectible interest existed, we need not discuss consideration, reasonableness of the time and area restrictions, or the clear overbreadth of activities covered by the covenant. *Accord, Helms Boys, Inc. v. Brady, supra* 171 W.Va. at 67, 297 S.E.2d, fn. at 842. Had the covenant restricted Ms. Torbett from performing professional services for a reasonable time for employer's clients formerly serviced by her or using confidential business information, it may have been narrow enough to protect a legitimate business interest. *Accord, Pemco Corp. v. Rose,* 163 W.Va. 420, 257 S.E.2d 885 (1979); *Rhoads v. Clifton, Gunderson & Co.,* 44 Ill.Dec. 914, 89 Ill.App.3d 751, 411 N.E.2d 1380 (1980); *Foti v. Cook,* 200 Va. 800, 263 S.E.2d 430 (1980). *See generally,* Annot., Enforceability, Insofar as Restrictions Would Be Reasonable, of Contract Containing Unreasonable Restrictions on Competition, 61 A.L.R.3d 397 (1975 and Supp.), Parts III D, IV C, and V C for types of restrictions found reasonable or modified to be reasonable in other jurisdictions.

8. Certainly an employer can attempt to show the reasonableness of time and area restrictions. *See* Annot., Enforceability of restrictive covenant, ancillary to employment contract, as affected by duration of restriction, 41 A.L.R.2d 15; and Annot., Enforceability of restrictive covenant, ancillary to employment contract, as affected by territorial extent of restriction, 43 A.L.R.2d 94.

bias, undue influence, misconduct, oversight, or some misconception of the facts or law." Syllabus Point 1, *Young v. West Virginia & P.R. Co.*, 44 W.Va. 218, 28 S.E. 932 (1894).

Syllabus Point 3, *W.L. Thaxton Const. Co. v. O.K. Const. Co.*, 170 W.Va. 657, 295 S.E.2d 822 (1982).

"A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by this Court on appeal unless the evidence plainly and decidedly preponderates against such finding." Syl. pt. 8, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968).

Syllabus Point 2, *Carey v. Campbell*, 170 W.Va. 541, 295 S.E.2d 32 (1982).

We will not disturb this factual finding. Wheeling Dollar did not prove a protectible legitimate interest, and the absence of such protectible interest makes the covenant unenforceable because it violates public policy. *Reddy v. Community Health Foundation, supra.*

## DECLARATORY JUDGMENT

■ A declaratory judgment action is a proper way for a restricted employee to test the enforceability of a noncompetition covenant in his or her employment contract. *Watkins v. Avnet*, 122 Ga.App. 474, 177 S.E.2d 582 (1970); Annot., Relief against covenant restricting right to engage in business or profession, as subject of declaratory judgment, 10 A.L.R.2d 743 (1950 and Later Case Service). Actions for declaratory judgments are covered by our Declaratory Judgment Act, W.Va.Code, 55–13–1 *et seq.*, and Rule 57, W.Va.Rules of Civil Procedure. The act states that our courts of record "shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed." W.Va.Code, 55–13–1. Code, 55–13–8 allows further relief (beyond the declaration of rights) upon petition made to a court having jurisdiction:

Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

We have construed this provision to require a separate complaint and have disallowed claims for other relief asked for in a declaratory judgment petition. Syllabus Point 5, *Tharp v. Tharp*, 131 W.Va. 529, 48 S.E.2d 793 (1948); *West Virginia-Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46, 48 (1947).

West Virginia Rules of Civil Procedure, effective 1960, include Rule 57:

The procedure for obtaining a declaratory judgment pursuant to the West Virginia Uniform Declaratory Judgments Act, Code, chapter 55, article 13 [§ 55–13–1 et seq.], shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. *The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.* A party may demand declaratory relief or coercive relief or both in one action. *Further relief based on a declaratory judgment may be granted in the declaratory action or upon petition* to any court in which the declaratory action might have been instituted. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar. (Emphasis supplied.)

■ This rule clearly permits a trial court to grant further relief in the declaratory action. Code, 55–13–8, to the extent it is procedural, has been superseded by Rule 57.[9] Therefore, Syllabus Point 5, *Tharp v.*

---

**9.** We have often discussed the changes made by

the Judicial Reorganization Amendment to our

*Tharp, supra,* is overruled. Torbett could ask for damages with her declaratory judgment.[10]

## TORTIOUS INTERFERENCE

Wheeling Dollar challenges Torbett's right to get damages: her complaint did not charge that the bank breached her contract, nor did she name any tort committed by it. We can find only one cause of action for damages that could possibly support any recovery by her, and that is for tortious interference with prospective employment or business relations. She did not plead this, and we remand so that she may amend her complaint to allege this tort, Wheeling Dollar may answer, and both parties can make their proofs. In doing this, we make absolutely no judgment about the merits of her cause or of affirmative defenses that Wheeling Dollar may have.

We have recognized tortious interference with business interests, *West Virginia Transportation Co. v. Standard Oil Co.,* 50 W.Va. 611, 40 S.E. 591, 56 L.R.A. 804 (1902), with contractual relations, *Consolidation Coal Co. v. Disabled Miners of Southern West Virginia,* 328 F.Supp. 1248, *modified,* 442 F.2d 1261, *cert. denied,* 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971), and with a testamentary bequest, *Barone v. Barone,* 170 W.Va. 407,

294 S.E.2d 260 (1982), all akin to that which Ms. Torbett may have suffered.

■ Our research reveals that the tort of interference bears many names. The encyclopedic compilation, American Jurisprudence Second, covers it in a category called only Interference, for lack of better rubric. 45 Am.Jur.2d, Interference. This genre of tort may include interference with existing or prospective contractual, business or employment relationships, and is recognized in Restatement (Second) of Torts, including § 766B:

> § 766B. Intentional Interference with Prospective Contractual Relation.
>
> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

Further sections deny liability for negligent interference (766C),[11] set out factors by which to determine the propriety of the interference (§ 767)[12] and justifications, in-

---

Constitution, W.Va. Const. art. VIII, § 3. Adopted in 1974, it gave this Court authority to regulate procedure and practice in our courts. In addition to the constitution, we have legislatively-granted authority, W.Va.Code, 51–1–4, and our inherent rule-making power. To the extent statutes relating to pleading, practice or procedure are inconsistent or repugnant to our rules of civil procedure, they are no longer in force. *State ex rel. Quelch v. Daugherty,* 172 W.Va. 422, 306 S.E.2d 233 (1983).

**10.** It is a waste of time and money to require multiple litigation about other facets of a controversy that is in part susceptible to declaratory judgment relief. However, implicit in most legal proceedings are traditional findings about "rights, status and other legal relations," those things found in declaratory judgments. Torbett could have sued for damages and, on the way, her right to them would have been, necessarily, decided.

**11.** Restatement (Second) of Torts, § 766C:

"Negligent Interference with Contract or Prospective Contractual Relation.

"One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently

"(a) causing a third person not to perform a contract with the other, or

"(b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or

"(c) interfering with the other's acquiring a contractual relation with a third person."

**12.** Restatement (Second) of Torts, § 767:

"Factors in Determining Whether Interference is Improper.

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

"(a) the nature of the actor's conduct,

"(b) the actor's motive,

cluding competition (§ 768),[13] financial interest (§ 769),[14] responsibility for another (§ 770),[15] influencing another's business policy (§ 771),[16] requested advice (§ 772),[17] and such. We have relied upon the Restatement for guidance in outlining elements of and defenses to improper interference but, of course, are not tied to its categories and definitions.

Professor Prosser, in a chapter entitled Economic Relations, wrote about interference with contractual relations, interference with prospective advantage and injurious falsehood. Prosser on Torts (4th ed. 1971). American Law Reports has recently compiled cases in informative annotations on this subject. Annot., Liability of Third Party for Interference with Prospective Contractual Relationship Between Two Other Parties, 6 A.L.R.4th 195 (1981); Annot., Liability for Interference With At Will Business Relationship, 5 A.L.R.4th 9 (1981); Annot., Recovery Based on Tortfeasor's Profits in Action for Procuring Breach of Contract, 5 A.L.R.4th 1276. A majority of states recognize this tort in one form or another.

■ Most often plaintiffs in tort actions for interference with prospective contractual relations are businesses. It appears that in employer-employee contexts employees generally seek this remedy when an em-

"(c) the interests of the other with which the actor's conduct interferes,
"(d) the interests sought to be advanced by the actor,
"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
"(f) the proximity or remoteness of the actor's conduct to the interference and
"(g) the relations between the parties." [This category might embrace estoppel or other equitable defenses that would prohibit recovery when the instrument of interference is a contract, not adhesive, that is attempted to be raised as the interfering device.]

**13.** Restatement (Second) of Torts, § 768:
"Competition as Proper or Improper Interference.
"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
"(a) the relation concerns a matter involved in the competition between the actor and the other and
"(b) the actor does not employ wrongful means and
"(c) his action does not create or continue an unlawful restraint of trade and
"(d) his purpose is at least in part to advance his interest in competing with the other.
"(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will."

**14.** Restatement (Second) of Torts, § 769:
"Actor Having Financial Interest in Business of Person Induced.
"One who, having a financial interest in the business of a third person intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he
"(a) does not employ wrongful means and
"(b) acts to protect his interest from being prejudiced by the relation."

**15.** Restatement (Second) of Torts, § 770:
"Actor Responsible for Welfare of Another.
"One who, charged with responsibility for the welfare of a third person, intentionally causes that person not to perform a contract or enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if the actor
"(a) does not employ wrongful means and
"(b) acts to protect the welfare of the third person."

**16.** Restatement (Second) of Torts, § 771:
"Inducement to Influence Another's Business Policy.
"One who intentionally causes a third person not to enter into a prospective contractual relation with another in order to influence the other's policy in the conduct of his business does not interfere improperly with the other's relation if
"(a) the actor has an economic interest in the matter with reference to which he wishes to influence the policy of the other and
"(b) the desired policy does not unlawfully restrain trade or otherwise violate an established public policy and
"(c) the means employed are not wrongful."

**17.** Restatement (Second) of Torts, § 772:
"Advice as Proper or Improper Interference.
"One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person
"(a) truthful information, or
"(b) honest advice within the scope of a request for the advice."

ployer has interfered by conveying false or pejorative information to a potential new employer.[18] We find one precedent that deals with unlawful behavior by an employer, preventing an employee from getting specific employment. *See, Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892 (1965).

But as Am.Jur.2d notes:

[I]n connection with the tort of interference, precedents are only suggestive, not conclusive, and the fact that a situation is one in which a remedy for interference has never previously been granted does not deter the courts from granting a remedy.

45 Am.Jur.2d *Interference,* § 1, p. 280 (footnote omitted).

A plaintiff must prove:

(1) existence of a contractual or business relationship or expectancy [with Security National Bank or Half Dollar Bank];

(2) an intentional act of interference by a party outside that relationship or expectancy [Wheeling Dollar's restrictive covenant on her];

(3) proof that the interference caused the harm sustained; and

(4) damages.

■ If this plaintiff makes a prima facie case for interference, Wheeling Dollar may prove lawful justification or privilege for its behavior as an affirmative defense. *Lowell v. Mother's Cake and Cookie Co.,* 79 Cal.App.3d 13, 144 Cal.Rptr. 664, 6 A.L.R.4th 184 (1978); *Middlesex Concrete Products and Excavating Corp. v. Carter-*

*et Industrial Assoc.,* 37 N.J. 507, 181 A.2d 774 (1962). *See generally* Restatement (Second) Torts, *supra;* Prosser, *supra;* 5 A.L.R.4th 9, *supra;* 6 A.L.R.4th 195, *supra. Contra, Bahleda v. Hankison Corp.,* 228 Pa.Super. 153, 323 A.2d 121 (1974), (wherein the court found that lack of privilege to interfere with a prospective business relationship was a critical element of the prima facie tort, to be pled and proved by a plaintiff, rather than an affirmative defense.)[19]

We understand that this opinion may severely curb use of restrictive covenants in future employment contracts. A scrivener must decide whether his covenant is sufficiently narrow to protect only legitimate business interests in a reasonable fashion, or risk his employer-client to damages if its mere existence interferes with an employment opportunity. Frivolous noncompetition clauses in employment contracts will probably be avoided.

We remand to the trial court for further proceedings consistent herewith.

Affirmed in part; reversed and remanded in part.

NEELY, Justice dissenting:

I dissent because today's decision opens the door for vexatious litigation that will frustrate legitimate business interests and make it impossible for both employers and employees to bargain about their commercial relationship. In *Reddy v. Community Health Foundation,* 171 W.Va. 368, 298 S.E.2d 906 (1982), this court held that reasonable covenants not to compete are not

---

**18.** Representative samples of employees' suits, although often they failed to make prima facie cases, are: *Lekich v. International Business Machines Corp.,* 469 F.Supp. 485 (E.D.Pa.1979); *Blumenthal v. Shaw,* 77 F. 954 (3d Cir.1897); *Brown v. Chem Haulers, Inc.,* Ala., 402 So.2d 887 (1981); *Andres v. Williams,* Del., 405 A.2d 121 (1979); *Willis v. Muscogee Mfg. Co.,* 120 Ga. 597, 48 S.E. 177 (1904); *Wabash R. Co. v. Young,* 162 Ind. 102, 69 N.E. 1003 (1904); *Lally v. Cantwell,* 30 Mo.App. 524 (1888); *Huskie v. Griffin,* 75 N.H. 345, 74 A. 595 (1909); *DeSantis v. Troy,* 83 Misc.2d 195, 371 N.Y.S.2d 310 (1975); *Gersh v. Kaspar & Esh, Inc.,* 11 App.Div.2d 1005, 206 N.Y.S.2d 510 (1960); *Kaulhausen v. Penn Mutual Life Ins. Co.,* 275 A.D. 753, 87 N.Y.S.2d 571 (1949); *Johnson v. Gray,* 263 N.C. 507, 139

S.E.2d 551 (1965); *Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.,* 281 Pa.Super. 560, 422 A.2d 611 (1980); *Dick v. Northern Pacific R. Co.,* 86 Wash. 211, 150 P. 8 (1915).

**19.** Restatement (Second) Torts § 773 was cited by the Pennsylvania court in *Bahleda v. Hankison, supra.* The Restatement recognized a right to interfere by a party who in good faith attempted to enforce a legitimate protectible interest. However, that defense would fail when applied to a restrictive covenant that does not protect any legitimate business interest at all, and thus violates the long-standing public policy against such covenants.

contrary to public policy. We further held that the reasonableness of any particular covenant is a question of fact. Thus, it is quite possible for an employer to enter into an agreement with a good-faith belief that it is proper only to learn later that a court has declared it unlawful. In fact, the employer may enter into the agreement with the willing compliance of the employee. The record indicates that the current case fits this scenario. Nevertheless, the majority opinion would allow an employee who breaches such a deal to sue his employer for a tort!

The majority's opinion holds that a mutual, voluntary commercial agreement becomes a tortious act when a court finds the contract unenforceable. Neither precedent nor logic supports such a holding. If a buyer enters into a contract with a seller to purchase 500 bushels of wheat and the entire wheat crop is devastated by drought, a court may hold the contract unenforceable under the doctrine of impossibility. It could not, however, require the buyer to pay damages to the seller for placing him in that unenviable but unforseen position. Under the logic of today's opinion, however, such an award would be allowed.

The majority admits in their opinion that they are unable to find case law directly supporting their position. I hope I can be forgiven if I do not feign surprise. Most cases involving interference with contractual relations involve three parties: an employee who breaches or contemplates a breach, an employer against whom the breach is perpetrated, and a third party who seeks to enter into an agreement with the breacher. There are a good many cases in which the party against whom the breach is perpetrated sues the third party alleging interference with an established contractual relationship. There are also numerous decisions in cases where the third party has sued the employer for precluding him from negotiating with the prospective breacher. There is, however, an understandable dearth of cases in which the breacher attempts to sue the victim of the breach for *allowing* him to make a bargain that the breaching party no longer finds satisfying. As the ancient legal principle reminds us: *"Nemo ex proprio dolo consequitur actionem."*

The majority is apparently undisturbed when it confounds this sound principle of law. Indeed today's opinion makes it not only possible but probable that parties will profit from their own wrongs. In *Reddy, supra,* we noted that it is dangerous to void all covenants not to compete. Striking all such covenants would: (1) deter employers from providing valuable training to their employees because they could not be assured of adequate compensation; (2) make the protection of trade secrets difficult; and, (3) allow employees to carry away to competitors goodwill that was purchased with the assets of a former employer. Yet today's decision does not stop at creating a system in which employers must be leery about the enforcibility of their bargains with employees: it advocates a system in which employees have a positive incentive to enter into agreements that they have no intention of keeping because their own decision to breach will give them a right to sue for damages under a tort theory.

The law we make concerning the resolution of in-court litigation has a dramatic effect on the way commercial parties organize their affairs outside of court. Precedents like today's have a chilling effect on commerce. Business entities must operate according to predictable rules if the wheels of commerce are to turn smoothly. If a corporation can enter into an agreement with an employee that safeguards its business secrets or assures that its investment in the employee's training in some specialized field will not be used to the profit of its competitors, it is in the interests of the company to provide such training and to enhance human potential. Corporations are not charitable associations, however, and it would be unfair to their stockholders to expect them to extend such valuable training if the attempt to protect their investment will be treated as a wrongful, tortious act.

The majority recognizes that today's decision will inevitably "severely curb" the use of restrictive covenants in employment

contracts. They argue that the effect will be to lead to narrowly drawn covenants not to compete and to avoid "frivolous" ones. The majority's sublime belief that a carefully drafted covenant not to compete will always be found acceptable hardly comports with experience. The one constant about trials is their unpredictability. By giving a party who breaches a covenant not to compete the blunt instrument of tort damages to wield against his or her employer, this court's ruling assures that courts will often face the nebulous question of reasonableness, or alternatively that employers will be forced into settling claims that have little or no merit. In short, by turning a contractual breach into a tortious injury this court has made a form of agreement that can be beneficial to both employers and employees so fraught with danger and uncertainty that it is no longer a viable commercial option.

The law of contracts and the law of torts have entirely different ramifications. When a contract is held invalid for any reason—lack of consideration, unconscionability, impossibility, unreasonableness, vagueness—the measure of loss is limited by the value of the contract. The risk that such a loss will occur is measureable and predictable. In tort law by contrast, the loss is measured by criteria completely within the control of the party sustaining the loss.

If Ms. Torbett had received an offer of a $500,000 a year salary, from an employer and had turned it down because of her idiosyncratic desire to remain with Wheeling Dollar Savings and had later changed her mind, she would be entitled to recover that entire lost salary as damages in a tort action because it is hornbook law that the tort feasor takes his victim as he finds her. There is no duty to mitigate damages. In fact, the tort "victim" could seek punitive damages from the dastardly robber-barron who extracted an agreement of job security from her in exchange for a mere 25% raise. Consider the pain and suffering! It is hard to overstate the amount of uncertainty that such a rule introduces into commercial dealings.

Furthermore, the case before us presents a singularly inappropriate instance for formulating extraordinary employee remedies. It is possible to imagine cases in which a worker is hopelessly overmatched in negotiations with his employer and is forced to sign a Draconian restrictive covenant, but those are not the facts of this case. Ms. Torbett had been employed in a responsible position with the defendant for more than five years. The negotiations that led to the contract she now breaches were commenced at her insistence. It was Ms. Torbett, and not the bank, who went into those bargaining sessions with the trump card. She had been offered another job and insisted that her salary be raised twenty-three percent and that she be given an assistant. The bank acceded to both of those demands. When she was later asked to sign a formal written agreement, that contract also included the restrictive covenant. She was aware of the clause at the time and protested its inclusion; but because the agreement was on balance so beneficial to her interests she chose not to cavil over one unattractive clause. Given the terms she was being offered, one can hardly characterize her determination as ill-advised or the resulting agreement as unconscionable.

I do not believe that it is unreasonable for an employer who has acceded to an employee's demand for a salary increase of twenty-three percent and has also agreed to incur the additional expense of hiring an assistant for her in order to retain her services in a department that is notoriously dependent on customer goodwill to request some formal assurance from her that she will not sell the bank's goodwill to another bank by leaving and taking customers with her. Although that is my understanding of the facts of this case, I would not quarrel with a court decision voiding the restrictive covenant. Reasonable men can differ on the interpretation of facts in a particular case. This court's decision goes beyond reason, however, when it establishes a general rule that such a clause is a tortious injury to the person who voluntarily accept-

ed it. That is bad law; but it is even worse business practice. I must dissent.