# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Everett Hannah,**
**Plaintiff Below, Petitioner**

**vs)  No. 13-1328** (Kanawha County 12-C-915)

**Douglas Tate, individually and in his capacity as**
**President and Director of Alpha Technologies, Inc.;**
**Alpha Technologies, Inc., and OODA, LLC,**
**Defendants Below, Respondents**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Everett Hannah, by counsel Herschel H. Rose III and Steven R. Broadwater, appeals the final order of the Circuit Court of Kanawha County, entered November 22, 2013, granting respondents' motion for summary judgment. Respondents Douglas Tate, Alpha Technologies, Inc., and OODA, LLC appear by counsel Webster J. Arceneaux III, Mark A. Sadd, James C. Stebbins, Sang Ah Koh, and Timothy J. LaFon.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner filed a complaint in the Circuit Court of Kanawha County in May of 2012, asserting causes of action against Respondent Alpha Technologies and Respondent Tate, Alpha's president and director, for breach of contract, fraud, and tortious interference based on petitioner's assertion that petitioner and respondents reached an "agreement in principle" to form a partnership to purchase "Building 6000" from Union Carbide Corporation.

Petitioner testified in a deposition that, in March of 2012, he had been in negotiations with Union Carbide for the purchase of Building 6000, when he learned that Respondent Alpha had made an offer to purchase the same building.[1] Petitioner directed his representative, David Bailey, to contact respondent. Mr. Bailey met with Charlie Dennie of Alpha, and later with Respondent Tate, on April 6, 2012. Petitioner alleges that the parties agreed at that meeting that they would jointly purchase Building 6000, with petitioner paying half the deposit and half the

---

[1] In fact, uncontroverted evidence shows that Union Carbide accepted respondents' offer to purchase Building 6000, and that those parties reached an oral agreement prior to the relevant events described in the body of this decision.

purchase price, and Respondent Alpha acting as managing partner. Mr. Bailey also testified in deposition and provided his version of events. He said that during the April 6th meeting, Mr. Bailey provided Mr. Dennie and Respondent Tate information about lease negotiations with Hewlett-Packard, a tenant of Building 6000, and also provided information about the possibility of erecting a gas well on the Building 6000 property. Mr. Bailey testified that before he provided this information, he asked Respondent Tate to verify that the parties "had a deal," and Respondent Tate verified that they did and shook hands. Petitioner asserts that Mr. Bailey considered the information he shared with Mr. Tate that day confidential. However, Mr. Bailey testified that it was information that Alpha could have obtained upon agreeing to buy the property.

The following day, April 7, 2012, Mr. Bailey sent electronic mail correspondence to attorney Kent George, with copies to petitioner, Mr. Dennie, and Respondent Tate. In that e-mail, Mr. Bailey set forth preliminary details about his understanding of the "agreement in principal[,]" proposed contractual terms, and asked that Mr. George draft a contract for the parties. The same day, Respondent Tate replied:

> I appreciate your time and effort with regards to the discussion we had yesterday. I do however need to clarify that while I am very interested in discussing options with you we do not have an agreement in place at this time; rather we have only agreed to discuss possibilities and options for creating a partnership by which we could possibly move forward with.

> We must fully understand all conditions and establish terms before I would consider such a business agreement. I look forward to speaking with you next week as we begin our discussions.

Mr. Bailey responded that he would propose a partnership agreement to Respondent Tate, and Respondent Tate could "comment on specifics." Respondent Tate testified that he and petitioner had no further discussions and did not meet until almost three weeks later, at which time Respondent Tate told petitioner that his participation was not needed for the Building 6000 project. In the meantime, Respondent Tate (on behalf of Respondent Alpha) signed a purchase and sale agreement with Union Carbide on April 9, 2012, consummating an oral deal that those parties had reached as early as March. Respondent Tate formed Respondent Ooda, LLC in May of 2012, and assigned Alpha's purchase rights of Building 6000 to it.

Shortly after these events, petitioner filed his complaint in the Circuit Court of Kanawha County. After discovery, respondents filed a motion for summary judgment, which the circuit court granted by order entered on November 22, 2013. The court found that the parties' agreement of partnership was "executory and conditional" and thus did not support the formation of a partnership, and that petitioner's asserted damages were only lost profits that were not recoverable because petitioner never contributed financially to the partnership. The court further found that the language of Mr. Bailey's April 7 e-mail showed that conditions and terms of partnership were not established. This appeal followed.

The instant case is before this Court on appeal from a circuit court order granting summary judgment. It is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our plenary review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). With these standards in mind, we consider the three assignments of error raised by petitioner: (1) that the circuit court erred when it determined that there was no genuine issue of fact with respect to petitioner's claim for breach of contract; (2) that the circuit court erred when it determined that there was no genuine issue of fact with respect to petitioner's claim for fraud; and (3) that the circuit court erred when it determined that there was no genuine issue of fact with respect to petitioner's claim for tortious interference.

It is undisputed that the parties did not agree on substantial terms of a partnership (though petitioner avers that the major terms—division of payment of purchase price and assignment of the role of "managing partner"—were addressed[2]), and that the parties reduced no agreement to writing. Petitioner supports his first assignment of error—that the circuit court erred in determining that there was no genuine issue of fact with respect to the breach of contract claim—with the suggestion that a jury could find that the parties had entered an enforceable "preliminary agreement" of partnership. Specifically, he argues the existence of a "Type II" preliminary agreement.[3] Such agreements are described as those which

> do not commit the parties to their ultimate contractual objective. Rather, they commit the parties to negotiate the open issues in good faith in an attempt to reach the contractual objective within the agreed framework. Under this duty to negotiate in good faith, a party is barred from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement.

---

[2] Contrary to the assertion that this term was settled, Mr. Bailey stated in his electronic mail to Mr. George that he "envision[ed] Alpha being the managing partner."

[3] The United States Court of Appeals for the Fourth Circuit has recognized that "West Virginia law is silent as to whether it recognizes the second type ["Type II"] of binding agreement, but following the modern trend in contract law, and many state courts that have recognized the pragmatism and commercial necessity of recognizing such agreements, we suspect that it would. We note that West Virginia recognizes that 'in every contract there exists an implied covenant of good faith and fair dealing.' *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270, 274 (1978)." *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 409 (4th Cir. 2002). Inasmuch as the evidence contained in the record on appeal does not establish circumstances that would persuade us to find the existence of a preliminary agreement, we do not consider at this time whether this type of binding agreement is consistent with our jurisprudence.

*Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 407 (4th Cir. 2002)(citations omitted).[4] *Burbach Broadcasting Co.* set forth five factors for consideration in determining whether such an agreement was formed: "1) the language of the agreement, 2) the existence of open terms, 3) whether there has been partial performance, 4) the context of negotiations, and 5) the custom of such transactions." *Id.* (quoting *Teachers Insurance and Annuity Assoc. of America v. Tribune Co.*, 670 F.Supp. 491, 499-503 (S.D.N.Y.1987).)

Considering these factors in the light most favorable to petitioner, and assuming we recognized a Type II agreement, we conclude that a Type II preliminary agreement was not formed. The only possible "language of the agreement" in this case is contained in the electronic mail exchange between Mr. Bailey and Respondent Tate, and that exchange reveals numerous open terms. There is no evidence of partial performance. The "negotiations" were conducted subsequent to respondents' offer to purchase Building 6000, and in the midst of their exchanging drafts of agreement with Union Carbide. While the parties have offered no evidence concerning the custom of transactions like this one, we do not hesitate to agree with respondents that "most prudent businesspeople contemplating a $6.1 million real property transaction would insist on any arrangement to be in writing[,]" as Respondent Tate insisted in his April 7 electronic mail response to Mr. Bailey. Accordingly, under the circumstances presented in the appendix record on appeal, there could be no preliminary agreement binding on the parties.

---

[4] Petitioner also argues that a jury could have found in his favor regarding the existence of a "Type I" preliminary agreement, one

> meant to be formalized at a later date. West Virginia law recognizes that where the parties have fully agreed upon all of the matters about which they are negotiating, and have fixed their reciprocal obligations and rights so that the same cannot thereafter be changed without mutual consent, there is a valid and binding contract, notwithstanding the parties may agree that these agreements and understandings shall be subsequently reduced to writing and signed by the parties. *Brown v. Western Maryland Ry. Co.,* 92 W.Va. 111, 114 S.E. 457, 460 (1922).

*Burbach,* 278 F.3d at 408. We disagree. Under the circumstances presented in this case, there is no possibility that a trier of fact could find that the parties "fixed their reciprocal obligations and rights" to such a degree. This is particularly true in light of the factors set forth for consideration in *Burbach Broadcasting Co.* to determine whether a Type I agreement was formed:

> 1) whether there has been an express reservation of the right not to be bound in the absence of a writing, 2) whether there has been partial performance of the contract, 3) whether all of the terms of the alleged contract have been agreed upon, and 4) whether the agreement at issue is the type of contract that is usually committed to writing. *Adjustrite Systems, Inc. v. GAB Business Services, Inc.,* 145 F.3d 543, 549 (2nd Cir. 1998); *see also* Restatement (Second) of Contracts § 27 cmt. c (1981).

*Id.*

Next we address petitioner's second assignment of error, wherein he argues that there was a genuine issue of fact with respect to his claim for fraud. In West Virginia, the essential elements in an action for fraud are:

(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981). Petitioner bases his fraud claim on his characterization of Mr. Bailey's having divulged "confidential" information (that he states was "previously unknown" to respondents) in exchange for Respondent Tate's assurance that the parties "had a deal." However, as the circuit court explained, Mr. Bailey's testimony clarified that the information that he provided was not actually confidential in nature. More importantly, there is no evidence that petitioner was harmed by Mr. Bailey's disclosure, because the evidence contained in the appendix record on appeal shows that respondents had orally agreed to the purchase of Building 6000 (and, in fact, had reviewed a draft of a purchase agreement) prior to the meeting of Mr. Bailey, Mr. Dennie, and Respondent Tate. We find no error on this issue.

Finally, in his third assignment of error, petitioner argues that there was a genuine issue of fact regarding his claim for tortious interference. He asserts that respondents misrepresented that they had an agreement to enter a partnership with him, causing him to cease negotiations for the purchase of Building 6000 with Union Carbide. According to syllabus point 2 of *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983), the elements of a prima facie case for tortious interference are: 1) existence of a contractual or business relationship or expectancy; 2) an intentional act of interference by a party outside that relationship or expectancy; 3) proof that the interference caused the harm sustained; and 4) damages. We find that Respondent Tate's electronic mail response to Mr. Bailey, sent one day after the meeting of Mr. Bailey, Mr. Dennie, and Respondent Tate, unequivocally clarified that the parties had not formed a partnership. This fact sufficiently negates any inference that respondents engaged in an "intentional act" directed at interfering with petitioner's expectation of a relationship with Union Carbide. Moreover, petitioner cannot prove that he had an understanding of partnership that detrimentally caused him to abandon his plan to purchase the building as a sole investor in light of Respondent Tate's clear disavowal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**
Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5