**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Jodie Long and Heather Simmons,**
**Plaintiffs Below, Petitioners**

**vs.) No. 20-0064** (Hardy County 17-C-9 and 18-C-2)

**Hardy County Board of Education, Sheena VanMeter, Barbara Whitecotton, Individually,**
**and as Superintendent of Hardy County Board of Education,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Jodie Long and Heather Simmons, the plaintiffs below, by counsel Mark W. Carbone, appeal the December 30, 2019, order of the Circuit Court of Hardy County granting summary judgment to respondents/defendants below, the Hardy County Board of Education, Sheena Van Meter, and Barbara Whitecotton[1] in petitioners' consolidated actions for intentional and reckless infliction of emotional distress, and for tortious interference.[2] Respondent Sheena Van Meter is represented by counsel Tamara J. DeFazio.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At all times relevant to this appeal, petitioners were employed by the Hardy County Board of Education as teachers at the Moorefield Elementary School, Respondent Van Meter was the Principal of the Moorefield Intermediate School, and Respondent Whitecotton was the Superintendent of the Hardy County Board of Education.

---

[1] Barbara Whitecotton was sued individually and as the Superintendent of the Hardy County Board of Education.

[2] Respondent Sheena Van Meter filed a response in opposition to Petitioner Long's and Petitioner Simmons's petition for appeal. Neither Respondent Hardy County Board of Education nor Respondent Barbara Whitecotton filed a response.

On January 9, 2016, petitioners, who are both over the age of twenty-one, attended a non-school-sponsored, women-only, social event in Hardy County known as the "Chick Feed." Petitioners admit that they consumed alcohol at that event. Thereafter, photographs of the event were posted on Facebook. Petitioners contend that although neither of them posted any of the Chick Feed photos, some of the photos nevertheless appeared on Petitioner Long's Facebook page. A couple of the photos depict petitioners consuming beverages. The Chick Feed pictures also show a female adult under the age of twenty-one drinking what appears to be an alcoholic beverage. Petitioners state that they did not organize the Chick Feed and did not invite any minors to the event.

Superintendent Whitecotton learned about the Chick Feed when she received copies of the Facebook pictures from that event from an anonymous source. Whitecotton later testified that she "guessed" the photos came from the Moorefield Intermediate School where Respondent Sheena Van Meter is the principal. Whitecotton talked to Board of Education employees about the Chick Feed photographs during her investigation of that event. Whitecotton also contacted the Chief of Police of the Moorefield City Police Department, Steve Reckart, to discuss the photos and the possibility that there were underage drinkers at the Chick Feed. Chief Reckart examined the photos and determined that two female adults under the age of twenty-one attended the Chick Feed. Petitioners state that Whitecotton eventually interviewed the under-aged adults about the event.

Principal Van Meter called Superintendent Whitecotton three times to discuss the Chick Feed photos and complaints from teachers at the Moorefield Intermediate School regarding the Chick Feed photos. Van Meter stated that teachers at the Moorefield Intermediate School were concerned that there was a dual standard of behavior, i.e., that some teachers could do certain things, while other teachers could not. Principal Van Meter asked Superintendent Whitecotton when she was going to do something about the pictures. Initially, Whitecotton took no action. Later, however, Whitecotton accused petitioners of allowing a minor to attend the Chick Feed where alcohol was served and declared that petitioners' behavior violated the Hardy County Schools' Employee Code of Conduct. Specifically, Whitecotton alleged that petitioners' actions at the Chick Feed did not "demonstrate . . . responsible citizenship by maintaining a high standard of conduct, self-control, or moral/ethical behavior." Whitecotton recommended a three-day suspension as punishment for petitioners' actions. However, following a disciplinary hearing on the matter, the Board of Education suspended both Long and Simmons for one day without pay.

Both petitioners appealed their suspensions to the West Virginia Public Employees' Grievance Board. Following a June 7, 2016, level three grievance hearing, the Grievance Board overturned petitioners' suspensions finding that the Hardy County Board of Education failed to prove that petitioners' behavior violated the Employee Code of Conduct by being unethical or immoral. The Grievance Board based this decision on the following findings: C.L., a person over the age of eighteen, but under the age of twenty-one, attended the Chick Feed. The record did not show that petitioners knew C.L.'s age or that she was drinking alcoholic beverages at the Chick Feed, or that petitioners invited C.L. to the Chick Feed. The Grievance Board also found that the Board of Education was unable to prove by a preponderance of the evidence that either petitioner had any part in posting the pictures of the Chick Feed on Facebook. The Grievance Board highlighted that "it is possible to be 'tagged' in a picture and once tagged, the picture will show up on the tagged individual's [Facebook] page, possibly without the knowledge of the tagged

individual." The Grievance Board further found that Principal Van Meter shared her opinion with the employees at the Moorefield Intermediate School that posting pictures of the Chick Feed on Facebook was a violation of the Employee Code of Conduct. However, the principal at the Moorefield Elementary School where petitioners worked testified that no one complained to him about the Chick Feed pictures. The Grievance Board further found that Superintendent Whitecotton concluded that petitioners violated the Employee Code of Conduct because she believed there was "general upheaval" in the school system due to the Facebook pictures; however, Whitecotton testified that no parents complained about the posted pictures. Finally, the Grievance Board found that Whitecotton admitted that she could not prove that petitioners (1) were drinking alcohol at the Chick Feed, (2) organized the event, or (3) that they knew C.L.'s age.

Petitioners brought two separate actions in the circuit court against respondents. Petitioners alleged that respondents intentionally or recklessly inflicted emotional distress, and tortiously interfered with petitioners' side businesses, i.e., Long's gymnastics business and Simmons' face-painting business. Petitioners further alleged that (1) the Board of Education and/or Superintendent Whitecotton failed to fully and properly investigate petitioners' attendance at the Chick Feed and the Facebook posts; (2) Principal Van Meter intentionally encouraged Whitecotton to take disciplinary action when Van Meter knew petitioners had done nothing wrong; (3) Van Meter made statements to other employees accusing petitioners of violating the Employee Code of Conduct when she knew otherwise; (4) unfounded rumors regarding the Chick Feed damaged petitioners' reputations; and (5) respondents' conduct was intentional, outrageous, and intolerable. All three respondents answered petitioners' complaints. The circuit court later consolidated petitioners' separate civil actions into a single consolidated action.

Respondents filed motions for summary judgment and, by order entered December 30, 2019, the circuit court granted summary judgment to all three respondents as to the claims of each of the petitioners. In that order, the circuit court noted that the question before it was not whether the Grievance Board correctly overturned petitioners' suspensions. Instead, the circuit court found that the questions were (1) whether respondents recklessly or intentionally inflicted emotional distress upon petitioners, and (2) whether respondents tortiously interfered with petitioners' businesses.

Regarding petitioners' claims of intentional or reckless infliction of emotional distress, the circuit court found that (1) petitioners did not claim that Superintendent Whitecotton violated any policy or procedure; (2) petitioners presented no evidence showing that respondents intended to harm or cause emotional distress to petitioners or that respondents knew harm or distress would occur; (3) the evidence showed that petitioners themselves did not believe respondents intended to harm them; and (4) petitioners failed to show that they reasonably suffered severe emotional distress. The court also did not find any evidence that petitioners were deprived of due process during the investigation or grievance process or that respondents released confidential information regarding petitioners. The court concluded that the evidence showed respondents did not intend to inflict emotional harm or distress upon petitioners, and that respondents' conduct did not rise to a level that could be considered extreme, outrageous, and beyond all decency as a matter of law. The court therefore concluded that there was no genuine issue of material fact and that no rational trier of fact could find that respondents engaged in the intentional or reckless infliction of emotional distress upon petitioners.

3

As for petitioners' claims of tortious interference with their businesses, the court found that petitioners presented no evidence (1) that respondents knew about petitioners' businesses; (2) that respondents acted with the intent to cause harm to their businesses; or (3) that their businesses sustained financial losses. Thus, the court concluded that petitioners also failed to show the essential elements of a claim for tortious interference with a business.

Petitioners now appeal the circuit court's summary judgment order. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). This Court reviews an order granting summary judgment de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 775 (1994).

Petitioners raise two assignments of error challenging the circuit court's order. In petitioners' first assignment of error, they argue that the circuit court erred in finding that petitioners failed to make a sufficient showing of the essential elements of the tort of intentional or reckless infliction of emotional distress. We established the elements of this cause of action, also known as the "tort of outrage," in Syllabus Point 3 of *Travis v. Alcon Laboratories, Inc.*, 202 W. Va. 369, 504 S.E.2d 419 (1998), and required proof of the following four elements:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Id*. We also noted in *Travis* that "[t]he employer-employee relationship should entitle an employee to 'a greater degree of protection from insult and outrage than if he were a stranger to defendants.'" *Id.* at 377, 504 S.E.2d at 427 (quoting *Alcorn v. Anbro Engineering, Inc.*, 468 P.2d 216, 218 n. 2 (Cal. 1970)).

As to the first element of *Travis*, petitioners argue that the quality of the investigation conducted by the respondents shows that respondents' actions were "outrageous" because they sought to punish petitioners for events that occurred outside of the workplace. Petitioners also contend that their attendance at the Chick Feed was neither unethical nor immoral and, that under any reasonable standard, they did not violate the Hardy County Board of Education's Code of Conduct. Petitioners therefore assert the circuit court erred in concluding that the respondents' conduct was not outrageous as a matter of law.

Upon our review of the record on appeal, we find no error in the circuit court's order. Syllabus Point 3 of *Travis* requires proof of conduct that "was atrocious, intolerable, and so

4

extreme and outrageous as to exceed the bounds of decency." Further, we noted in *Travis* that liability may not be imposed for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" or for "occasional acts that are definitely inconsiderate and unkind." *Id*. at 375-76, 504 S.E.2d at 425-26 (quoting *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 651, 461 S.E.2d 149, 157 (1995) (quoting *Restatement of Torts (Second)* § 46, cmt. d). Conduct sanctionable under *Travis* is that which is "regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 504 S.E.2d at 425. A defendant's conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Id.* (quoting *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir.1988)).

We also determined in *Travis* that "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]" *Id*. at 377, 504 S.E.2d at 427. Here, the circuit court concluded that respondents' conduct could not reasonably be regarded as so extreme and outrageous as to permit recovery. Although the circuit court acknowledged the deficiencies in respondents' investigation, it recognized that a reasonable principal, superintendent, and board of education would react to concerns raised about possible underage drinking at an event like the Chick Feed, and would seek to counter the disruption to the school system, particularly where the concerns were also raised with law enforcement. The circuit court found that in a "civilized community," school officials would act and would seek to defend the governing standards of professional conduct. The circuit court also found that although the actions of respondents might be "utterly unreasonable, unkind and unfair," they were not so atrocious and intolerable as to be actionable. On this record, we find no error.

Petitioners also challenge the circuit court's finding regarding the fourth element of *Travis*: "that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." The circuit court found that the petitioners offered no evidence that they "reasonably suffered severe emotional distress." While one petitioner claimed a lack of sleep as her injury, the circuit court concluded that the scant evidence offered of petitioners' claimed injuries did not "rise to the level of severe emotional distress that no reasonable person would be expected to endure." Petitioners counter that their ability to withstand the treatment inflicted upon them by respondents should not equate to a finding that they had no damages. We disagree. In *Travis*, we noted that the cause of action for intentional or reckless infliction of emotional distress requires proof of severe emotional distress. Severe distress includes "such reactions as mental suffering and anguish, shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* at 380, 504 S.E.2d at 430. "Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id*. (quoting *Restatement of Torts (Second)* § 46, cmt. j). While there is certainly a modicum of evidence in the record that the respondents' acts caused respondents some consternation, there is no evidence establishing that they suffered severe emotional distress. While the "reasonableness of the plaintiff's reaction will normally be a jury question," *id.*, on this record, we find no error in the circuit court's determination that the petitioners failed to introduce evidence sufficient to constitute a triable issue for a jury. We therefore find no error in the circuit court's conclusion that petitioners

5

failed to establish their claim that respondents should be liable under *Travis* for intentionally or recklessly causing severe emotional distress.[3]

Petitioners' second assignment of error concerns the circuit court's finding that there was insufficient evidence that respondents tortiously interfered with petitioners' businesses. We set forth the elements of a cause of action for tortious interference in Syllabus Point 2 of *Torbett v. Wheeling Dollar Savings & Trust Company*, 173 W. Va. 210, 314 S.E.2d 166 (1983):

> To establish prima facie proof of tortious interference, a plaintiff must show:
> (1) existence of a contractual or business relationship or expectancy;
> (2) an intentional act of interference by a party outside that relationship or expectancy;
> (3) proof that the interference caused the harm sustained; and
> (4) damages.
>
> If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper.

Petitioners argue it is undisputed that they had a "business relationship," because petitioner Long had a gymnastics business and petitioner Simmons had a face painting business. Petitioners further argue that respondents must have intended to interfere with petitioners' business relationships because both of the businesses involved children. Finally, petitioners argue that whether respondents acted with intent was a question of fact for a jury and therefore, resolution by way of summary judgment was error.

We find no error in the circuit court's conclusion that petitioners failed to establish a genuine issue of material fact regarding the elements of a tortious interference claim. The circuit court found no material evidence of record upon which to show the respondents conducted themselves in a manner intended to cause harm to petitioners' businesses, and our review supports this finding. Furthermore, petitioners admitted during their depositions that they believed respondents did not intend to harm them or their business relationships. Petitioners also could not establish that respondents knew that either petitioner owned a business. Most importantly,

---

[3] Petitioners also argue, under the second element of *Travis*, that respondents acted recklessly because it was certain or substantially certain that emotional distress would result from their conduct. Petitioners contend that respondents' recklessness is proven by the fact that respondents' investigation of the Chick Feed event was insufficient, and that respondents effectively accused petitioners of doing something immoral or unethical. Given that the circuit court correctly assessed that petitioners failed to establish the first and fourth elements of *Travis*, we need not consider this argument because *Travis* requires that *all* "four elements must be established" for the plaintiff to prevail. 202 W. Va. at 371, 504 S.E.2d at 421, Syl. Pt. 3.

petitioners failed to articulate any discernable information concerning the finances of their businesses, and, therefore, they did not establish any damages caused by respondents' actions. We, therefore, find no error in the circuit court's conclusion that petitioners failed to create a triable issue on their claim for tortious interference.

Accordingly, for the foregoing reasons, we affirm the circuit court's December 30, 2019, order granting summary judgment to all three respondents

Affirmed.

**ISSUED:** July 19, 2021

**CONCURRED:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton